UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 4:15CR489 JAR |
| ) | |
| MELVIN DANTE HARDY, AKA MD, ) | |
| ) | |
|     Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REOPEN
MOTION HEARING AND MOVE TO SUPPRESS EVIDENCE AND STATEMENTS**

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Cristian M. Stevens, Assistant United States Attorney for said District, and responds to defendant's motion to reopen motion hearing and move [sic] to suppress evidence and statements (Doc. #89).  In support of its response, the Government states as follows:

## I.  INTRODUCTION

In his motion, defendant argues that the cell phone, cocaine base (crack), marijuana, and morphine seized from defendant on January 9, 2014, should be suppressed because police detectives and Secret Service agents used precision location information and a cell site simulator to locate defendant, who was a fugitive from justice.  Defendant concedes that the investigators obtained a warrant to locate defendant's cell phone, but maintains that the warrant was insufficient.

Defendant's motion should be denied.  The Government does not dispute, in this case, that the use of a cell site simulator constituted a search for purposes of the Fourth Amendment.  That

1

search was reasonable for a number of reasons.  First, the precision location monitoring was used to facilitate the arrest of defendant pursuant to a pending arrest warrant for his parole violations. Defendant also was wanted in connection with the seizure of his guns and drugs on January 7, 2014, during the execution of a search warrant at 5260 Genevieve.  Second, the precision location monitoring was authorized by a duly issued search warrant.  In any event, the investigators acted in good-faith reliance on the warrant.

## II.   FACTS

### A.   The Cell Phone Precision Location Monitoring Search Warrant

On January 8, 2014, St. Louis Metropolitan Police Detective John Baumann applied for a search warrant for, among other things, precision location information to triangulate the location of defendant's cell phone.  The warrant application was based on information, including the below information, contained in a sworn application.[1]

Detective Baumann, who was assigned to the Intelligence Division of the Police Department, had received information that an active warrant for defendant's arrest had issued for a parole violation on the original charges of unlawful use of a weapon and distribution of a controlled substance.  Ex. A at 3.

Defendant also was wanted by detectives with the Special Operations Division of the Police Department for three counts of unlawful possession of a firearm and five counts of possession of a controlled substance, stemming from a search warrant executed one day earlier, on January 7, 2014, at 5260 Genevieve.[2]  Defendant was a target of the investigation and was observed leaving 5260 Genevieve shortly before the execution of the search warrant. Ex. A at 3-4.

---

[1]   The application and warrant are attached hereto as Government's Exhibit A.

[2]   The search warrant for 5260 Genevieve is attached hereto as Government's Exhibit B.

As the detectives concluded the search of 5260 Genevieve, the owner of the residence, Beatrice Laden, contacted defendant on his cell phone at (314) 699-0127. Furthermore, a reliable informant indicated that the same cell phone number was defendant's current cell phone number. Detectives contacted defendant at that cell phone number, and defendant acknowledged his identity. According, defendant's cell phone number was confirmed to be (314) 699-0127, with cell phone service provided by Sprint. Ex. A at 4, 5.

Defendant had an extensive criminal history, including arrests for, among other things, assault, unlawful possession of a firearm, unlawful use of a weapon, burglary, domestic assault, possession of a controlled substance, and distribution of a controlled substance. Defendant was a convicted felon and was then under parole supervision stemming from convictions for unlawful use of a weapon and distribution of a controlled substance. Ex. A at 4.

Defendant was not apprehended on January 7, 2014, and instead became an active fugitive. To find defendant and arrest him, the detectives sought a search warrant for defendant's cell phone records, precision location information, and "[t]wenty-four hour a day assistance . . . including precision location pursuant to probable cause based information queries and all reasonable assistance to permit the aforementioned Agencies to triangulate target location." Ex. A at 2, 9-10. This precision location information and the triangulation of the location of defendant's cell phone was "critical" to the detectives' ability "to monitor the movements of the 'target cellular telephone' thereby assisting in locating and/or arrest" of defendant. Ex. A at 5.

The warrant application was reviewed by Assistant Circuit Attorney Michael Mueth and submitted to St. Louis City Associate Circuit Judge Theresa C. Burke for review. Ex. A at 6. Judge Burke found probable cause to issue the search warrant based on the allegations in the application and issued the search warrant. Specifically, Judge Burke found:

> [B]ased on specific and articulable facts verified under oath that Detective John Baumann . . . has certified that the information likely to be obtained is relevant and material to an ongoing criminal investigation wanted in connection with . . . Parole Violation 217.72.   WHEREAS, the Judge of this Court from the sworn allegations of said complaint . . . filed herewith finds that there is probable cause to believe that allegations of the complaint are true and probable cause for the issuance of an order pursuant to Title 18, United States Code, Sections 2703(3), 3122, 3123, and 3124 therein.   Ex. A at 7-8.

On the signature page of the search warrant, the court repeated that the search warrant would permit the detectives to obtain, among other information, "Precision Locate" information for defendant's cell phone.   Ex. A at 10.

Judge Burke issued the search warrant on January 8, 2014, and the detectives executed the warrant on January 8 and 9, 2014.   They enlisted the assistance of U.S. Secret Service agents in obtaining cell phone records, including precision location information, and in using a cell site simulator to locate defendant's cell phone.

### B.   Precision Location Monitoring

The Secret Service agents used GPS or precision location information provided by the service provider to locate defendant's cell phone.    This information indicated that the cell phone was located at or near 4042 C.D. Banks Avenue.

On January 9, 2014, the date of defendant's arrest, the Secret Service used a cell site simulator to assist them in triangulating the precise location of defendant's cell phone.   Cell site simulators work because cellular telephones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.   When sending or receiving a communication, a cellular device, for example a cellular telephone, broadcasts certain signals to the cellular tower that is routing its communication.   These signals include a cellular device's unique identifiers.

To determine the location of a cell phone, a cell site simulator broadcasts signals that will be received by the target cell phone or receives signals from nearby cellular devices, including the target cell phone.  Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others.  The device may send a signal to the target cell phone and thereby prompt it to send signals that include the unique identifier of the cell phone.  Law enforcement may monitor the signals broadcast by the target cell phone and use that information to triangulate the target cell phone's location, even if it is located inside a house, apartment, or other building.

The device may interrupt cellular service of phones or other cellular devices within its immediate vicinity.  Any service disruption to non-target devices will be brief and temporary, and all operations attempt to limit the interference with such devices.  In order to connect with the target cell phone, the device may briefly exchange signals with all phones or other cellular devices in its vicinity.  These signals may include cell phone identifiers.  The device will not complete a connection with cellular devices determined not to be the target cell phone, and law enforcement limits collection of information from devices other than the target cell phone.  To the extent that any information from a cellular device other than the target cell phone is collected by the device, law enforcement deletes that information and makes no investigative use of it, other than distinguishing the target cell phone from all other cellular devices.

Using the cell site simulator, the Secret Service agents were able to triangulate the location of defendant's cell phone to the residence at 4042 C.D. Banks.

**C.   Execution of the Search Warrant and Defendant's January 9, 2014, Arrest**

On January 9, 2014, the police detectives went to 4042 C.D. Banks Avenue to arrest defendant.  The detectives found defendant there and placed him under arrest.  A search of

5

defendant incident to arrest revealed multiple plastic bags containing cocaine base (crack), morphine pills, and marijuana.

The detectives also seized defendant's cell phone from him and later executed a search warrant on the cell phone.[3]   The search of the cell phone revealed photographs of defendant at 5260 Genevieve and text messages, in which defendant discussed sales of heroin, morphine, and cocaine (base), and referred to defendant's preparing to shoot the same firearms seized from 5260 Genevieve on January 7, 2014.

### III.   ARGUMENT

### A.   The Use of the Cell Site Simulator Was a Reasonable Search to Execute the Parole Violator's Arrest Warrant.

Although no controlling legal precedent requires the conclusion that the use of a cell site simulator is a search for Fourth Amendment purposes, the Government does not contest, in this circumstance, that the investigators' use of the cell site simulator amounted to a search.[4]   That search, nonetheless, was reasonable to facilitate the arrest of defendant, a fugitive parolee, even if the investigators had not obtained a search warrant.

The parole violator's warrant for defendant's arrest implicitly authorized the investigators to determine the location of his cell phone in order to effectuate his arrest.   By way of analogy, it is well settled that an arrest warrant "implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980); United States v. Glover, 746 F.3d 369, 373 (8th

---

[3]   The search warrant to search the contents of defendant's cell phone is attached hereto as Government's Exhibit C.

[4]   Thus, defendant's repeated reliance on Kyllo v. United States, 533 U.S. 27, 40 (2001), for the proposition that thermal imaging constitutes a Fourth Amendment search, is inconsequential. Motion at 4-6.

Cir. 2014). Such a search is permitted despite that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton, 445 U.S. at 585-86 (quoting United States v. United States District Court, 407 U.S. 297 (1972)); United States v. Whisenton, 765 F.3d 938, 944 (8th Cir. 2014). As the Supreme Court explained in Steagald v. United States, 451 U.S. 204, 214 n.7 (1981), "[b]ecause an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." Id.

The principles of Payton and Steagald apply equally to allow a search to locate the cell phone of the subject of an arrest warrant when there is reason to believe the suspect is in possession of the phone. Various courts have endorsed this corollary of Payton and Steagald. In Meisler v. State, 321 P.3d. 930, 933 (Nev. 2014), for example, the court held, "Because an arrest warrant would have justified an entry into Meisler's home, an arrest warrant likewise justifies a digital entry into his cell phone to retrieve GPS coordinates for the purpose of locating him."

In addition, in In re Smartphone Geolocation Data Application, 977 F. Supp. 2d 129, 147 (E.D.N.Y. 2013), the court reasoned that "[t]he Fourth Amendment cannot accord protection to geolocation data associated with a defendant's cell phone while denying such protection against a physical invasion of his home, as the latter is entitled to the highest order of defense."

Finally, in United States v. Bermudez, 2006 WL 3197181, at *11 (S.D. Ind. June 30, 2006), aff'd on other grounds 509 F.3d 820 (7th Cir. 2007), the court considered the use of a cell site simulator to locate the subject of an arrest warrant. The court concluded that the arrest warrant "gave law enforcement the authority to physically enter a target's home in order to search for the target;…and also gave law enforcement the authority to conduct a less intrusive

7

search for the fugitive by tracking cell location information in an effort to locate him, even if it invaded the apartment he rented." Id.[5]

In this case, because defendant was the subject of a parole violator's arrest warrant, and because officers had reason to believe he was in possession of the targeted cell phone, a search to determine the location of that cell phone was reasonable for purposes of the Fourth Amendment.

Similarly, the simple fact that defendant was on parole supervision justified the use of the cell site simulator to find him. Supreme Court precedent makes clear that parolees and probationers have diminished Fourth Amendment rights, which, in this case, permitted the use of the cell site simulator to find defendant, even without a warrant or a showing of probable cause.

The Supreme Court has explained, "A State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements." Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987). According to the Griffin Court, "it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" Id. at 874 (quoting Morrisey v. Brewer, 408 U.S. 471, 480 (1972)). Parole supervision is a "special need" of the state permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. Id. at 875.

Importantly, since Griffin, the Supreme Court has made clear that the permissibility of a search of a parolee based on something less than probable cause does not turn on whether the

---

[5] Defendant relies almost exclusively on United States v. Lambis, No. 15CR734, 2016 WL 3870940 (S.D.N.Y. July 12, 2016), an unpublished opinion from the Southern District of New York. Lambis easily is distinguishable on the basis that the defendant there was not the subject of an active parole violator's warrant for his arrest.

search was conducted by a parole officer monitoring whether the parolee was complying with his parole conditions.  See United States v. Knights, 534 U.S. 112, 117-18 (2001).  Rather, the state's "interest in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise, may . . . justifiably focus on probationers in a way that it does not on the ordinary citizen."  Id. at 121.  The Court has explained:

> When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.  The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary.  Id.; see also Samson v. California, 547 U.S. 843, 852 (2006) ("[P]arolees . . . have severely diminished expectations of privacy by virtue of their status alone.").

Accordingly, the use of the cell site simulator to search for defendant, a fugitive parolee, need only be justified by a reasonable suspicion that defendant was engaged in criminal activity, and did not require probable cause or a search warrant.

Here, the use of precision location monitoring to find defendant was supported, at the very least, by reasonable suspicion, and even probable cause.  Defendant was wanted for multiple counts of unlawful possession of a firearm and possession of a controlled substance stemming from the search warrant executed one day earlier at 5260 Genevieve.  Defendant was a target of the investigation and was observed leaving 5260 Genevieve just before the execution of the search warrant.  Ex. A at 3-4.  Also contributing to the reasonable suspicion were defendant's multiple gun and drug arrests, his convictions for unlawful use of a weapon and distribution of a controlled substance, and that he was on parole for those offenses.  Ex. A at 4.

For these reasons, the use of the cell site simulator to find defendant was a reasonable search under the Fourth Amendment, regardless whether the investigators obtained a search

warrant.

## B.   The Use of the Cell Site Simulator Was Justified by a Search Warrant.

At any rate, the investigators applied for and obtained a search warrant, and otherwise painstakingly pursued legal process to search 5260 Genevieve, find defendant and his cell phone, and search the contents of his cell phone.

According to the Supreme Court, a search warrant complies with the Fourth Amendment when it meets three criteria:  it was issued by a neutral magistrate; it was based on a showing of "probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense;" and it satisfies the particularity requirement.   Dalia v. United States, 441 U.S. 238, 255 (1979).

The instant warrant for the precision location monitoring of defendant's cell phone satisfies each of those criteria.  First, it was issued by a neutral magistrate, St. Louis City Associate Circuit Judge Theresa C. Burke.   Ex. A at 10.

Second, the issuing judge found probable cause to support the warrant.  Specifically, Judge Burke found:

> [B]ased on specific and articulable facts verified under oath that Detective John Baumann . . . has certified that the information likely to be obtained is relevant and material to an ongoing criminal investigation wanted in connection with . . . Parole Violation 217.72.  WHEREAS, the Judge of this Court from the sworn allegations of said complaint . . . filed herewith finds that there is probable cause to believe that allegations of the complaint are true and probable cause for the issuance of an order pursuant to Title 18, United States Code, Sections 2703(3), 3122, 3123, and 3124 therein.  Ex. A at 7-8.

This finding of probable cause is "afforded great deference on review," and this Court will not upset it "unless there was no substantial basis for that finding."   United States v. Wallace, 713 F.3d 422, 427 (8th Cir. 2013).   As already demonstrated, the court's finding of probable cause is

10

amply supported by the facts in the application.  Ex. A at 4-5.

Third, both the application and warrant describe the objects of the warrant with particularity.  As an initial matter, the warrant described defendant's cell phone with particularity, by phone number (314) 699-0127.  Ex. A at 8.  The warrant further enumerated, as items 1 through 9, the phone records to be obtained and the precision location monitoring to be conducted, including "precision location pursuant to probable cause based information queries and all reasonable assistance to permit the aforementioned Agencies to triangulate target location."  Ex. A at 2, 9-10.  In other words, the warrant authorized the investigators to determine the precise location of defendant's cell phone, and acknowledged that the precision location information would be used to "triangulate" the cell phone's location.  See United States v. Rigmaiden, No. CR-08-0814-001-PHX-DGC, 2013 WL 1932800, at *18-*19 (D. Ariz. May 8, 2013) (rejecting defendant's argument that warrant directed to telecommunications providers did not authorize cell site simulator, and holding "[t]he plain and common sense reading of [the warrant] is that Verizon was to assist the FBI by providing information and other services while the FBI used a mobile tracking device in a public location to find the [cell phone] aircard").

While conceding that the investigators obtained a warrant, defendant maintains that the warrant was insufficient.  Motion at 3 ("Agents did provide a warrant application regarding the January 9, 2014 search which authorized the installation and monitoring of a pen register and/or trap and trace device and/or caller ID and for the production of telecommunications records." (emphasis in original)).  Defendant's argument is that the search warrant is overbroad, because it "fails to provide adequate information on what a cell site simulator is and how it works to a court in order to assure the search would not be overly intrusive."  Motion at 4.  Defendant's argument is contrary to the Supreme Court's interpretation of the particularity requirement for a warrant.

11

In United States v. Karo, 468 U.S. 705, 718 (1984), a bumper-beeper tracking device case, the Supreme Court described the information that must be included in a warrant to track an item's location. In addition to describing "the circumstances that led agents to wish to install the beeper," the warrant must "describe the object" to be tracked and specify "the length of time for which beeper surveillance is requested." Id. In this case, the facts supporting the court's finding of probable cause constitute the circumstances that justify the location tracking; defendant's cell phone is the object to be tracked; and the duration of tracking is delineated as 60 days, although defendant was apprehended only one day after the warrant issued. Because the instant warrant readily satisfies these particularity requirements, it complies with the Fourth Amendment.

The scope of the particularity requirement may be distilled to essentially "two matters . . . the place to be searched and the persons or things to be seized." United States v. Grubbs, 547 U.S. 90, 97 (2006). "Nothing in the language of the Constitution or in th[e] [Supreme] Court's decisions interpreting that language suggests that . . . search warrants also must include a specification of the precise manner in which they are to be executed." Id. at 98 (quoting Dalia, 441 U.S. at 255). Thus, although the warrant was required to disclose its objective with particularity – "to triangulate target location" – it was not necessary for the warrant to more precisely describe how the agents would go about determining its location.

The argument made by defendant here – that the warrant should have said more about the use of the cell site simulator – was explicitly rejected in Rigmaiden, 2013 WL 1932800. There, the court held:

> Although the warrant did not describe the precise means by which the mobile tracking device would operate, what signals it would send to the aircard, what signals it would capture, or the fact that it would cause some of Defendant's electricity to be consumed in the process, these and the many other details of the device's operation described in Defendant's motion clearly concern the manner in

12

which the search was to be executed, something that need not be stated with particularity in the warrant.  Id. at *17 (citing Dalia, 441 U.S. at 257-58; Grubbs, 547 U.S. at 97-98).

Still, defendant insists that the search warrant application here is overbroad "in that it allows law enforcement to search and seize information from a person unrelated to suspected criminal activity and also information pertaining to third parties to whom [sic] it lacks any probable cause."  Motion at 4.  The Rigmaiden court rejected precisely this argument: "Although it is true . . . that the application did not disclose that the mobile tracking device would capture signals from other cell phones and aircards in the area of Defendant's apartment, the Court regards this as a detail of execution which need not be specified under Dalia."  Rigmaiden, 2013 WL 1932800 at *20.

The reasoning of Rigmaiden is fully applicable here.  The instant warrant satisfied the Fourth Amendment because it specified its objective with particularity.  At every opportunity, the investigators went to great lengths to pursue legal process from neutral magistrates, including (as defendant concedes) applying for, and obtaining, a search warrant to determine the location of defendant's cell phone.  Therefore, the evidence seized from defendant upon his arrest on January 9, 2014, at 4042 C.D. Banks – defendant's cell phone, cocaine base (crack), morphine, and marijuana – should not be suppressed.

## C.   The Investigators Acted in Good Faith.

Even if this Court were to identify a deficiency in the search warrant (there is none), the evidence seized from defendant should not be excluded because the investigators acted in good faith.  That is, "a reasonably well trained officer" would not have known that the use of the cell site simulator "was illegal despite the magistrate's authorization."  United States v. Leon, 468 U.S. 897, 922 n.23 (1984).  An investigator's objective good-faith reliance on a warrant

ordinarily precludes exclusion of evidence found pursuant to that warrant. See United States v. Long, 797 F.3d 558, 566 (8th Cir. 2015).

As explained above, defendant fully concedes that the investigators obtained a search warrant. The application for that warrant contained a statement of probable cause sufficient to support the warrant. See United States v. Barajas, 710 F.3d 1102, 1110 (10th Cir. 2013) (holding that Leon applied to cell phone location warrant where affidavit was not "devoid of facts"). Indeed, the detail the warrant contains exceeds that required by the Supreme Court for a warrant sufficient to permit wireless tracking. See Karo, 468 U.S. at 718. Furthermore, at every turn, the investigators took great pains to obtain the proper legal process, including acquiring a search warrant for 5260 Genevieve and a search warrant authorizing the search of defendant's cell phone contents. Accordingly, the warrant reasonably could be presumed valid to authorize location tracking with a cell site simulator, and the investigators acted in good-faith reliance thereon.[6]

---

[6] It bears noting that, like the good faith exception to the exclusionary rule, the exceptions for attenuation and inevitable discovery also apply. Under the attenuation exception, the exclusionary rule does not apply where "the link between the illegality and th[e] evidence was sufficiently attenuated to dissipate the taint," Segura v. United States, 468 U.S. 796, 815 (1984), including "when the causal connection is remote" or when "the interest protected by the constitutional guarantee that has been violated would not be served by suppression," Hudson v. Michigan, 547 U.S.586, 592-93 (2006). Here, a search warrant intervened between the precision location monitoring and the search of the contents of defendant's cell phone. Similarly, the inevitable discovery doctrine permits the evidence seized from defendant to be admitted, even if not lawfully seized, because that evidence "ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). Defendant was actively sought, and would have continued to be sought, regardless of any precision location monitoring, for an active parole violator's warrant and for a "wanted" for multiple gun and drug felonies.

## IV.   CONCLUSION

WHEREFORE, the Government requests that this Court deny defendant's motion to reopen motion hearing and move [sic] to suppress evidence and statements.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

s/   *Cristian M. Stevens*
CRISTIAN M. STEVENS (#48028MO)
Assistant United States Attorney
111 S. Tenth Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system this 26th day of August, 2016, to Diane Dragan, Assistant Federal Public Defender, 1010 Market Street, Suite 200, St. Louis, MO 63101.

s/ *Cristian M. Stevens*
ASSISTANT UNITED STATES ATTORNEY